United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ANTHONY RAMOS,

Plaintiff,

v.

UNITED OMAHA LIFE INSURANCE COMPANY,

Defendant.
_______________________________________/

No. C 12-3761 PJH

**ORDER**

Defendant's motion to dismiss the second cause of action, or in the alternative, to strike certain allegations in the complaint, came on for hearing on November 7, 2012. Plaintiff appeared by his counsel Brian Kim, and defendant appeared by its counsel J. Russell Stedman. Having read the parties' papers and carefully considered their arguments and the relevant legal authority, the court hereby GRANTS the motion as follows.

**BACKGROUND**

This is a case brought under the Employee Retirement Income Security Act, 29 U.S.C. § 1001, et seq. ("ERISA"). Plaintiff Anthony Ramos was employed by Eichleay Engineers, and was insured under The Eichleay Engineers Inc. Long Term Disability Plan ("the Plan"), a group long-term disability plan sponsored by his employer. The Plan was insured by defendant United of Omaha Life Insurance Company ("United"), which was also the administrator and claims fiduciary of the Plan.

Plaintiff alleges that while he was employed by Eichleay Engineers and was insured under the Plan, he became disabled and entitled to benefits. He alleges that since October 11, 2010, he has been unable to perform the usual duties of his occupation.

Shortly after becoming disabled, plaintiff applied for long-term disability ("LTD")

benefits under the Plan. United paid benefits until December 10, 2011, at which point it terminated the benefits. Plaintiff claims that he remains "totally disabled" under the Plan's definition, and therefore remains entitled to receive benefits. Plaintiff appealed the termination of benefits, but the appeal was denied by United on March 14, 2012, when it affirmed its prior termination of benefits.

Plaintiff filed the complaint in this action on July 18, 2012, alleging two causes of action: (1) recovery of employee benefits, under 29 U.S.C. § 1132(a)(1)(B), plus attorney's fees and costs, under 29 U.S.C. § 132(g); and (2) equitable relief for breach of fiduciary duty, under 29 U.S.C. § 1132(a)(3). Both claims are asserted against United – the Plan insurer and administrator.

It is the second cause of action for equitable relief under § 1132(a)(3) that is at issue in this motion. Section 1132(a)(3) provides that "[a] civil action may be brought . . . by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan[.]"

In the second cause of action, plaintiff asserts breach of fiduciary duty against United – both "as an individual Plan participant and on behalf of all other participants and beneficiaries of the Plan." Cplt ¶ 24.[1] He alleges that a claim for benefits due under the Plan (as asserted in the first cause of action) will not provide him with an adequate remedy at law in light of what he claims is United's continuing course of conduct in violating the terms of the Plan and applicable law. Cplt ¶ 25.

Plaintiff asserts further that United is "obliged to discharge its duties solely in the interest of beneficiaries and participants for the exclusive purpose of providing beneficiaries and participants with all benefits due, defraying reasonable expenses of the Plan, using all prudent skill and diligence in accordance with the documents and instruments governing

[1] The court notes, however, that there are no class allegations in the complaint.

the Plan." Cplt ¶ 26.

Plaintiff alleges that United has breached its fiduciary duties, and requests a judgment permanently enjoining United from interpreting the Plan so as to deny benefits based on an interpretation of "total disability" different from that required under California law and the terms of the Plan, including a requirement that a claimant be unable to work with reasonable continuity in the usual and customary way; permanently enjoining United from obtaining "input from biased medical consultants with a conflict of interest with United who are not appropriately trained and experienced in the conditions which are the subject of the claim;" and permanently enjoining United from failing provide all documents related to "benefit claims" upon request. Cplt ¶ 27.

Further, plaintiff seeks a judgment permanently enjoining United from "ever serving as a fiduciary with respect to the Plan;" and also seeks "appropriate equitable relief from United" as well as an order from the court that the full amount of benefits due be paid with interest on all retroactive payments; that United be "enjoined from terminating benefits for the duration of the applicable maximum benefit period under the Plan," and that plaintiff be placed in the position he would have been in had he been paid the full amount of benefits to which he is entitled, "including, without limitation, interest, attorneys' fees and other losses resulting from United's breach." Cplt ¶ 28.[2]

United now seeks an order dismissing the second cause of action for failure to state a claim, or, in the alternative, an order striking certain allegations in the second cause of action, plus the prayer for equitable and injunctive relief.

Plaintiff argues that the second cause of action should not be dismissed at this stage of the litigation, as it is not possible, in the absence of a more fully developed record, to determine what equitable relief might be warranted under § 1132(a)(3). Plaintiff has cited

---

[2] These requests for permanent injunctions are included as part of the second cause of action, but are not specifically listed in the prayer for relief, which simply prays for "a determination that plaintiff is entitled to receive benefits," "an injunction mandating the payment of benefits to [p]laintiff," and "equitable and injunctive relief as set forth above."

to a number of decisions in which the district court declined to dismiss similar claims asserted in complaints that were substantially similar to the complaint in this action. See, e.g., Carten v. Hartford Life and Acc. Ins. Co., 2010 WL 4236805 at *2-4 (N.D. Cal. Oct. 21, 2010); Fowler v. Aetna Life Ins. Co., 2008 WL 4911172 at *5 (N.D. Cal. Nov. 13, 2008); Caplan v. CNA Short Term Disability Plan, 479 F.Supp. 2d 1108, 1113 (N.D. Cal. 2007); Ehrman v. Standard Ins. Co., 2007 WL 1288465 at *4-5 (N.D. Cal. May 2, 2007); Finkelstein v. Guardian Life Ins. Co. America, 2007 WL 4287329 at *4 (N.D. Cal. Dec. 5, 2007). Nevertheless, the court finds more persuasive the approach adopted by the court in Brady v. United of Omaha Life Ins. Co., __ F.Supp. 2d __, 2012 WL 3583033 (N.D. Cal. Aug. 20, 2012) – where the court dismissed requests for injunctive relief that essentially mirror the requests at issue here.

## DISCUSSION

A. Legal Standards

1. Motions to dismiss for failure to state a claim

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests for the legal sufficiency of the claims alleged in the complaint. Ileto v. Glock, Inc., 349 F.3d 1191, 1199-1200 (9th Cir. 2003). Review is limited to the contents of the complaint. Allarcom Pay Television, Ltd. v. Gen. Instrument Corp., 69 F.3d 381, 385 (9th Cir. 1995). To survive a motion to dismiss for failure to state a claim, a complaint generally must satisfy only the minimal notice pleading requirements of Federal Rule of Civil Procedure 8, which requires that a complaint include a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

A complaint may be dismissed under Rule 12(b)(6) for failure to state a claim if the plaintiff fails to state a cognizable legal theory, or does not allege sufficient facts to support a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). The court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." Outdoor Media Grp., Inc. v. City of Beaumont, 506 F.3d 895, 899-900 (9th Cir. 2007). However, legally conclusory

statements, not supported by actual factual allegations, need not be accepted, Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009), and the allegations in the complaint "must be enough to raise a right to relief above the speculative level," Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations and quotations omitted).

A motion to dismiss should be granted if the complaint does not proffer enough facts to state a claim for relief that is plausible on its face. See id. at 558-59. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citation omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" Id. at 679. In the event dismissal is warranted, it is generally without prejudice, unless it is clear the complaint cannot be saved by any amendment. See Sparling v. Daou, 411 F.3d 1006, 1013 (9th Cir. 2005).

2. Motions to strike

Federal Rule of Civil Procedure 12(f) provides that the court "may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial . . . ." Whittlestone, Inc. v. Handi-Craft Co., 618 F.3d 970, 973 (9th Cir. 2010) (quotation and citation omitted). In order to determine whether to grant a motion to strike under Rule 12(f), the court must decide whether the matter the moving party seeks to have stricken is (1) an insufficient defense; (2) redundant; (3) immaterial; (4) impertinent; or (5) scandalous. Id. at 973-74.

Motions to strike are not favored and "should not be granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation." Colaprico v. Sun Microsystem, Inc., 758 F.Supp. 1335, 1339 (N.D. Cal. 1991). When a court considers a motion to strike, it "must view the pleading in a light most favorable to the pleading party." In re 2TheMart.com, Inc. Sec Lit., 114 F Supp. 2d 955,

United States District Court
For the Northern District of California

965 (C.D. Cal. 2000). A court must deny the motion to strike if there is any doubt whether the allegations in the pleadings might be relevant in the action. Id.

B. Defendant's Motion

As set forth above, the second cause of action for equitable relief seeks (1) a judgment permanently enjoining United from denying benefits based on an interpretation of "total disability" different from that required under California law; (2) a judgment permanently enjoining United from obtaining input from biased or inappropriately trained medical consultants; (3) a judgment permanently enjoining United from failing to provide all documents related to "benefit claims" upon request; (4) a judgment permanently enjoining United from "ever again serving as a fiduciary with respect to the Plan;" (5) an order directing United to pay "the full amount of benefits due" including "interest on retroactive payments;" (6) a judgment enjoining United from "terminating benefits for the duration of the maximum benefit period under the Plan;" and (7) an order requiring that plaintiff be placed in the position he would have been in had he been paid the full amount of benefits to which he is entitled, "including, without limitation, interest, attorneys' fees and other losses resulting from the breach." Cplt ¶¶ 27-28.

United seeks an order dismissing the second cause of action, or, if the court declines to dismiss the entire cause of action, an order striking those portions of the second cause of action that are not legally viable, as well as the prayer for declaratory and injunctive relief. The question to be decided is whether any of the injunctive relief sought by plaintiff is potentially "other equitable relief" to which he is entitled under § 1132(a)(3).

In Varity Corp. v. Howe, 516 U.S. 489 (1996), the Supreme Court held that individual equitable relief is "appropriate" within the meaning of section 1132(a)(3) where Congress did not provide adequate relief elsewhere in ERISA's remedial scheme. Id. at 515. The Court described § 1132(a)(3) as a "catchall" that acts "as a safety net, offering appropriate equitable relief for injuries caused by violations that [section 1132] does not elsewhere adequately remedy." Id. at 512. However, "where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in

which case such relief normally would not be 'appropriate.'" Id. at 515.

In its first main argument, United asserts that plaintiff is improperly seeking benefits and other monetary damages as a form of equitable relief; that plaintiff cannot seek an injunction under § 1132(a)(3) prohibiting United from acting as a fiduciary to the Plan; that plaintiff is improperly seeking attorney's fees and costs under § 1132(a)(3); and that plaintiff is improperly seeking to enjoin United from failing to provide all documents related to benefit claims upon request.

In construing the phrase "other appropriate equitable relief," the Supreme Court has not allowed claims for monetary damages. See Carpenters Health & Welfare Trust for S. Cal. v. Vonderharr, 384 F.3d 667, 671 (9th Cir. 2004) (citing Mertens v. Hewitt Assoc., 508 U.S. 248, 253-54 (1993)). Rather, remedies have been "limited to those categories of relief that were typically available in equity." Id. (quotations omitted).

Here, plaintiff has conceded that he is precluded from seeking the remedies listed avove in (4), (5), and (7) in a claim for "other equitable relief" under § 1132(a)(3). Thus, the motion to dismiss those requests is GRANTED. The remedy sought in (3) – an order requiring that documents be provided – is also GRANTED, because plaintiff has a remedy under § 1132(c)(1). Under § 1132(c), a plan administrator "who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary . . . may in the court's discretion be personally liable to such participant or beneficiary . . . . " 29 U.S.C. § 1132(c)(1)(B). Since a plan participant may sue an administrator under § 1132(c)(1) if the plan administrator fails to comply with a request for information, see Sgro v. Danone Waters of North America, Inc., 532 F.3d 940, 945 (9th Cir. 2008), ERISA provides a specific remedy for an administrator's failure to provide documents on request. See also 29 C.F.R. § 2560.503-1(h)(2)(iii).

The remaining three requests are (1) a request for an order requiring application of state law definition of "total disability;" (2) a request for an order barring the use of "biased" or inappropriately "trained" medical consultants/reviewers; and (6) a request for an order barring United from terminating benefits for the duration of the applicable benefit period.

United States District Court
For the Northern District of California

1. Injunction requiring United to apply California's definition of "total disability"

United argues that the request for an injunction requiring application of the California definition of "total disability" is preempted by ERISA. In response, plaintiff asserts that the claim should not be dismissed on a Rule 12(b)(6) motion, and also contends that this proposed injunction is not preempted, but rather is subject to ERISA's "savings clause." The court finds that the motion must be GRANTED as to this request for injunctive relief.

Under 29 U.S.C. § 1144, any state law that "relate[s] to . . . employee benefit plan[s]" is preempted by ERISA. 29 U.S.C. § 1144(a). The savings clause excepts from this preemption clause any law that "regulat[es] insurance." Id. § 1144(b)(2)(A). A state law must be "specifically directed toward" the insurance industry in order to fall under ERISA's savings clause; laws of general applicability that have some bearing on insurers do not qualify. Kentucky Ass'n of Health Plans, Inc. v. Miller, 538 U.S. 329, 334 (2003). A state law is deemed to be one that "regulates insurance" if it is "specifically directed toward entities engaged in insurance," and if it "substantially affect[s] the risk pooling arrangement between the insurer and the insured." Id. at 341-42.

In enacting the enforcement provisions of ERISA, 29 U.S.C. § 1132, Congress clearly expressed an intent that those provisions be the exclusive vehicle for actions by ERISA-plan participants and beneficiaries asserting improper processing of claims for benefits, and that varying state law causes of action for claims within the scope of § 1132 would pose an obstacle to the purposes and objectives of Congress. See Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 52 (1987); see also New York State Conference of Blue Cross and Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645, 657 (1995). Thus, "the interpretation of ERISA insurance policies is governed by a uniform federal common law." See Evans v. Safeco Life Ins. Co., 916 F.2d 1437, 1439 (9th Cir. 1990); see also McClure v. Life Ins. Co. of N. America, 84 F.3d 1129, 1134 (9th Cir. 1996) (construing ERISA plan's definition of "complete and total disability" under federal common law).

Here, plaintiff is not proposing to resolve his claims through any state law causes of action, as such. Instead, he wants the ERISA causes of action to be interpreted using a

state-law standard for the definition of "total disability." Under ERISA, "state law" is defined as "all laws, decisions, rules, regulations or other State actions having the effect of law," 29 U.S.C. § 1144(c)(1), and includes common law rules developed by decisions of state courts. See UNUM Life Ins. Co. of America v. Ward, 526 U.S. 358, 367 n.1 (1999). Here, plaintiff has located this state-law standard in a 1942 decision by the California Supreme Court – Erreca v. Western States Life Ins. Co., 19 Cal. 2d 388 (1942).

In Erreca, the plaintiff was insured under a policy of life insurance that also provided benefits for occupational disability. Under the terms of the policy, the plaintiff would be entitled to benefits in the event of his total and permanent disability prior to his sixtieth birthday. The policy defined "total disability" to mean "whenever the insured becomes wholly disabled by bodily injury or disease so that he is prevented thereby from engaging in any occupation, or performing any work whatsoever for remuneration or profit." Id. at 390.

The plaintiff was a farmer who had engaged in grain and stock farming his entire life. When he was 58, he was thrown from a horse and suffered a multiple fracture of his leg, plus torn ligaments in his knee. His injuries eventually healed, but the knee remained unstable and because of that and the other complications, he was unable to walk for any extended period without extreme pain. He applied for disability benefits, but the insurance company determined that his disability was partial only and that it did not "wholly prevent" him from "carrying on any work whatsoever for remuneration or profit." Id. at 390-91.

The California Supreme Court found that the plaintiff was not insured as a farmer or farm laborer, but for any disability that prevented him from engaging in any work whatsoever for remuneration or profit. Id. at 395. Because the plaintiff had little formal education, however, and no training for other work, the court found that he must be deemed to be totally disabled if he was unable to pursue the occupation of farmer or farm supervisor. Id. at 395-96. Based on common law principles, the court concluded that the plaintiff was totally and permanently disabled, since he could no longer perform any manual labor and could no longer engage on a regular basis in any of the activities required by his occupation as a farm manager, with the exception of some intermittent paper work. Id.

Erreca stands for the proposition that California courts should interpret the meaning of "total/general disability" in insurance policies in a practical rather than a literal fashion. See Moore v. American United Life Ins. Co., 150 Cal. App. 3d 610, 618 (1984). Prior to Erreca, some courts had held that under "general disability" policies, an insured could obtain benefits only upon proof that he/she was unable to perform the work of any occupation – in contrast to "occupational disability" policies, which provided benefits so long as the insured was unable to perform the work that was engaged in at the time the policy was written. Erreca, 19 Cal. 2d at 393-94.

Erreca tempered the harshness of "general disability" policies by holding that, where an insured is prevented from pursuing other employment in light of his capabilities and station in life (e.g., age, level of education, relevant experience), policy benefits might be obtained even though other employment is theoretically possible, so long as the insured could demonstrate that he was prevented from working "with reasonable continuity in his customary occupation or in any other occupation in which he might reasonably be expected to engage in view of his station and physical and mental capacity." Id. at 394-95; see also Moore, 150 Cal. App. 3d at 618.

The Erreca analysis has been applied numerous times in California state court cases and in federal cases, in interpreting language in general disability policies issued as part of life insurance policies, or in disability income protection policies or other types of disability policies that were not issued in connection with an employee benefit plan, and were therefore not covered by ERISA. For example, in Hangarter v. Provident Life and Acc. Ins. Co., 373 F.3d 998 (9th Cir. 2004), a case cited by plaintiff, the court applied Erreca's definition of "total disability" in connection with a breach of contract claim.

However, Hangartner did not involve a claim brought under ERISA. See id. at 1003. Moreover, the court specifically noted that when an insurance policy is part of an employee welfare benefit plan governed by ERISA, "then a plaintiff's state law claims relating to that policy are preempted and federal law applies to determine recovery." Id. at 1011 n.8 (citing Pilot Life, 481 U.S. at 56-57; Kanne v. Conn. Gen. Life Ins. Co., 867 F.2d 489, 493-94 (9th

Cir.1988)); see also Evans, 916 F.2d at 1440 ("state laws of insurance policy interpretation do not qualify for the savings clause exception and are preempted"). Accordingly, the court finds that California's definition of "total disability" is not applicable to an ERISA disability insurance policy. See Brady, 2012 WL 3583033 at *5-7.

2. Injunction barring United from using "biased" and "inexperienced" medical consultants

United argues that the claim seeking an injunction as to United's use of "biased" and "inexperienced" medical consultants is unworkable and impractical. Plaintiff contends that the claim should not be dismissed for failure to state a claim because he is making allegations regarding an insurer's pattern and practice that go beyond the denial of an individual benefit claim.

The court finds that the motion must be GRANTED as to this request for injunctive relief. The proposed injunction provides no clear or enforceable standard for determining whether a medical consultant is appropriately trained or experienced, or has a conflict of interest; which medical consultants or medical consulting companies the injunction would cover; or which conditions and/or types of claims would be covered. Thus such an injunction would be unworkable and unenforceable – particularly if plaintiff intends that the court would be responsible for monitoring and/or policing the employment of medical consultants or reviewers. See id., 2012 WL 3583033 at *7-8.

Moreover, to the extent that an insurer uses medical consultants who are biased or inexperienced in the evaluation of a particular claim for benefits, that issue can be raised by that claimant as part of a § 1132(a)(1) claim for retroactive reinstatement of benefits.

3. Injunction barring United from terminating benefits for the duration of the applicable benefit period

The request for an injunction barring United from terminating benefits for the duration of the applicable benefit period essentially duplicates the request in the § 1132(a)(1)(B) claim for a declaration as to entitlement to future benefits, and the motion is GRANTED on that basis.

United States District Court
For the Northern District of California

**CONCLUSION**

In accordance with the foregoing, defendant's motion is GRANTED, with prejudice, as to the following equitable remedies sought in plaintiff's second cause of action, at ¶¶ 27-28:

(1) a judgment permanently enjoining United from denying benefits based on an interpretation of "total disability" different from that required under California law and the terms of the Plan, including a requirement that a claimant be unable to work with reasonable continuity in the usual and customary way;

(2) a judgment permanently enjoining United from obtaining "input from biased medical consultants with a conflict of interest with United who are not appropriately trained and experienced in the conditions which are the subject of the claim;"

(3) a judgment permanently enjoining United from "failing to provide all documents related to benefit claims upon request;"

(4) a judgment permanently enjoining United from "ever again serving as a fiduciary with respect to the Plan;"

(5) an order directing United to pay "the full amount of benefits due" including "interest on all retroactive payments due and owing;"

(6) a judgment enjoining United from "terminating benefits for the duration of the applicable maximum benefit period under the Plan;" and

(7) an order that plaintiff "be placed in the position he would have been in had he been paid the full amount of benefits to which he is entitled, including, without limitation, interest, attorneys' fees and other losses resulting from United's breach."

**IT IS SO ORDERED.**

Dated: January 3, 2013

PHYLLIS J. HAMILTON
United States District Judge