UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY RAMOS,<br><br>          Plaintiff,<br><br>     v.<br><br>UNITED OF OMAHA LIFE INSURANCE COMPANY,<br><br>          Defendant. | Case No.  12-cv-03761-JST<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR ADMINISTRATIVE RELIEF, GRANTING DEFENDANT'S MOTION FOR JUDGMENT, AND DENYING PLAINTIFF'S MOTION FOR JUDGMENT**<br><br>Re: ECF Nos. 35, 38, and 44. |

In this case arising under the Employee Retirement Income Security Act, 29 U.S.C. § 1001, *et seq.* ("ERISA"), Plaintiff Anthony Ramos ("Plaintiff") and Defendant United of Omaha Life Insurance Company ("Defendant") have filed cross-motions for judgment pursuant to Rule 52 of the Federal Rules of Civil Procedure.  Notice of Motion and Motion for Judgment ("Plaintiff's Motion"), ECF No. 35; Defendant United of Omaha Life Insurance Company's Notice of Motion and Motion for Judgment on Partial Findings ("Defendant's Motion"), ECF No. 38.  Defendant has also filed an administrative motion objecting to Plaintiff's response brief, pursuant to Local Rule 7-11.  Defendant United of Omaha Life Insurance Company's Notice of Administrative Motion and Motion ("Defendant's Administrative Motion").

## I. BACKGROUND

### A. Procedural Background

Plaintiff filed this complaint against Defendant in July 2012, asserting a cause of action for recovery of employee benefits pursuant to 29 U.S.C. § 1132(a)(1)(B) and a second cause of action for equitable relief for breach of fiduciary duty.  In January 2013, the Court granted Defendant's motion to dismiss the second cause of action with prejudice.  ECF No. 25.

The parties stipulated that this matter would be resolved on the merits through dispositive cross-motions for judgment pursuant to Rule 52 of the Federal Rules of Civil Procedure. Joint Case Management Statement, ECF No. 23; Supplemental Joint Case Management Statements at ECF Nos. 27 & 30. The parties also stipulated to the completeness of the Administrative Record upon which the Court would decide the motions. ECF No. 38-1. In May, Plaintiff and Defendant each filed such motions, and responses thereto. Plaintiff's Motion; Defendant's Motion; Plaintiff's Opposition to Defendant United of Omaha Life Insurance Company's Motion for Judgment ("Plaintiff's Opp."), ECF No. 42; Defendant United of Omaha Life Insurance Company's Opposition to Plaintiff's Motion for Judgment on Partial Findings ("Defendant's Opp."), ECF No. 41.

Plaintiff's Motion argued that Plaintiff was totally disabled by his seizure condition. Plaintiff's Motion, at 18:7-8. In his opposition, Plaintiff argued that other conditions besides his seizure condition rendered him disabled, and submitted a declaration with exhibits relating to his subsequent social security disability benefits award. Plaintiff's Opp. at 9:21-10:27; Declaration of Anthony Ramos in Support of Plaintiff's Opposition to Defendant United's Motion for Judgment, ECF No. 43. Defendant filed a Motion for Administrative Relief, objecting to the declaration and to Plaintiff raising new arguments in its opposition that it did not raise in its motion. Defendant's Motion for Administrative Relief. Plaintiff declined to stipulate to withdraw those materials, and also did not file any response or opposition to Defendant's Administrative Motion, as was his right under Civil Local Rule 7-11(b). Declaration of Brendan V. Mullan, at ¶ 5, ECF. No. 45.

**B.  Jurisdiction**

Plaintiff's cause of action arises under ERISA, a federal statute. This Court therefore has federal-question jurisdiction pursuant to 28 U.S.C. § 1331.

**C.  Legal Standard**

"ERISA was enacted 'to promote the interests of employees and their beneficiaries in employee benefit plans,' and 'to protect contractually defined benefits.'" Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 113, (1989) (internal citations omitted). ERISA "permits a person denied benefits under an employee benefit plan to challenge that denial in federal court."

2

Metropolitan Life Ins. Co. v. Glenn, 554 U.S. 105, 108 (2008). "ERISA's civil-enforcement provision . . . allows a claimant 'to recover benefits due to him under the terms of his plan [and] to enforce his rights under the terms of the plan.'" Muniz v. Amec Const. Mgmt., Inc., 623 F.3d 1290, 1294 (9th Cir. 2010) (quoting 29 U.S.C. § 1132(a)(1)(B)).

"[A] denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone, 489 U.S. at 115. In this case, the parties have stipulated, and the Court agrees, that *de novo* review is appropriate. Joint Case Management Statement, ECF No. 23; Supplemental Joint Case Management Statements at ECF Nos. 27 & 30.

Under *de novo* review, "the court simply proceeds to evaluate whether the plan administrator correctly or incorrectly denied benefits with no deference given to the administrator's decision." Abatie v. Alta Health & Life Ins. Co., 458 F.3d 955, 963 (9th Cir. 2006) (en banc). "[W]hen the court reviews a plan administrator's decision under the *de novo* standard of review, the burden of proof is placed on the claimant." Muniz, 623 F.3d at 1294.

ERISA's "statutory scheme . . . 'is built around reliance on the face of written plan documents.'" U.S. Airways, Inc. v. McCutchen, ___ U.S. ___, 133 S. Ct. 1537, 1548 (2013) (quoting Curtiss–Wright Corp. v. Schoonejongen, 514 U.S. 73, 83 (1995)). "Courts construe ERISA plans, as they do other contracts," with reference to "ordinary principles of contract interpretation." U.S. Airways, 133 S. Ct. at 1548-49 (2013). "[A]mbiguities are construed *contra proferentem,* and . . . ambiguities are construed in favor of the insured." Kearney v. Standard Ins. Co., 175 F.3d 1084, 1090 (9th Cir. 1999).

"When a Court conducts a *de novo* review of an administrator's denial of long-term disability benefits in an ERISA case, the Court effectively conducts a bench trial upon the record," and can proceed to enter judgment pursuant to Rule 52. Allenby v. Westaff, Inc., Case No. 04-2423 TEH, 2006 WL 3648655, at *1 (N.D. Cal. Dec. 12, 2006) (citing Kearney, 175 F.3d at 1094-95). "In a Rule 52 motion . . . the court does not determine whether there is an issue of material fact, but whether the plaintiff is disabled under the policy, and is to 'evaluate the persuasiveness of

3

conflicting testimony,' and make findings of fact." Wiley v. Cendant Corp. Short Term Disability Plan, Case No. 09-00423 CRB, 2010 WL 309670, at *6 (N.D. Cal. Jan. 19, 2010) (quoting Kearney, 175 F.3d at 1095).

## II. FINDINGS OF FACT AND CONCLUSIONS OF LAW

Eichleay Engineers, Inc. ("Eichleay") maintained a Long-Term Disability Plan for its employees that was governed by ERISA. Complaint, at ¶ 3; Answer, at ¶ 3. Defendant issued a group insurance policy ("the Policy") funding the disability benefits provided by Eichleay, which became effective January 1, 2010. Administrative Record ("AR") 1-56.

Under the Policy, long-term disability benefits were payable for any employee deemed "Totally Disabled." AR, 35 & 49. The Policy defines Totally Disabled and Total Disability as follows:

> Totally Disabled or Total Disability means that as a result of Injury or Sickness You are unable to perform with reasonable continuity the Substantial and Material Acts necessary to pursue Your Usual Occupation and You are not working in Your Usual Occupation.

AR 49. The Policy defines "Usual Occupation" as the "Substantial and Material Acts of the occupation You were regularly performing for the Policyholder when Disability began. Usual occupation is not necessarily limited to the specific job You performed for the Policyholder." Id. The Policy also defines Substantial and Material Acts as follows:

> Substantial and Material Acts means the important tasks, functions, and operations generally required by employers from those engaged in Your Usual Occupation that cannot be reasonably omitted or modified. In determining what substantial and material acts are necessary to pursue Your Usual Occupation, We will first look at the specific duties required by Your employer. If You are unable to perform one or more of the duties with reasonable continuity, We will then determine whether those duties are customarily required of other employees engaged in Your Usual Occupation. If any specific, material duties required of You by Your employer differ from the material duties customarily required of other employees engaged in Your Usual Occupation, then We will not consider those duties in determining what substantial and material acts are necessary to pursue Your Usual Occupation.

AR 48-49.

Plaintiff began working for Eichleay in 2005, and became insured under the terms of the Plan when it came into effect in January 2010. AR at 57. Plaintiff was employed by Eichleay, but

4

1  he performed his work at the site of an oil refinery run by one of Eichleay's clients Valero, where
2  he was supervised by Valero employees. Id.

3  In January 2011, Plaintiff submitted a long-term disability claim to Defendant, stating that
4  he was unable to work due to "seizures/disorientation," but expected to return to work in March
5  2011. AR 701. Plaintiff supported his claim with a statement from neurologist Dr. Albert
6  Mitchell. AR 706-07. Dr. Mitchell diagnosed Plaintiff with "partial complex seizures," and
7  identified a number of workplace limitations: "no climbing ladders or heights," and "[n]o working
8  with heavy equipment." AR 707. Defendant approved Plaintiff's claim on May 31, 2011, and
9  paid benefits retroactively to January 11, 2011 and monthly thereafter. AR 493-95.

10  After receiving a supplemental statement from Dr. Mitchell on August 15, 2011,
11  Defendant sought a medical review from two nurse-consultants. AR 140-42; 742-43, 746-48.
12  Defendant, Dr. Mitchell, and Plaintiff engaged in written correspondence and exchanged
13  information regarding Plaintiff's job requirements and current medical conditions. AR 166-68,
14  172-73, 356, 368. In this correspondence, Dr. Mitchell made clear his opinion that Plaintiff was
15  restricted from walking or climbing to any heights, and that it would be dangerous to rely on
16  Plaintiff to read pressure valves because Plaintiff had difficulty concentrating during a seizure
17  episode. AR 140-42, 172-73. Plaintiff also provided Defendant with his own description of his
18  prior job duties, and included a position qualification outline from his former employer. AR 356
19  & 368. Defendant denied further disability benefits on December 11, 2001, after determining that
20  Plaintiff was not prevented from performing the Substantial and Material Acts of his Usual
21  Occupation. AR 284-89.

22  Plaintiff submitted a written appeal. AR 269. In evaluating this appeal, Defendant
23  obtained updated medical records from Dr. Mitchell and Plaintiff's primary physician Dr. Josefina
24  Arenas. AR 156-62; 234-41. In response to a questionnaire and job description sent by Eichleay,
25  Dr. Mitchell stated that Plaintiff "would be unable to work in a production facility where he was
26  required to climb heights over 150 feet without a harness," and "he shouldn't work around volatile
27  fluids." AR 244-45. Defendant's nurse-consultant went slightly further, concurring that based on
28  Plaintiff's self-reported seizures, it was appropriate to restrict Plaintiff from climbing ladders,

working at heights, working with hazardous materials, working around moving/operating machinery, and driving commercial vehicles. AR 735-38. Defendant denied Plaintiff's appeal March 12, 2012, again concluding that the medical records did not explain why Plaintiff was disabled from performing the Substantial and Material Acts of his Usual Occupation. AR 82-88.

Plaintiff offers three arguments why he has met his burden of showing that Defendant wrongly denied benefits. First, Plaintiff offers various criticisms about the manner in which Defendant considered Plaintiff's claim, and criticizes Defendant for improperly reaching a different conclusion about Plaintiff's medical condition than Dr. Miller. Defendant concedes this point *arguendo* for the purposes of this motion, because the manner in which Defendant conducted its review is irrelevant to the Court's *de novo* review. The parties do not dispute that Dr. Miller's assessment of Plaintiff's seizure condition is the single pertinent assessment of Plaintiff's medical condition. Defendant's sole ground for denying Plaintiff benefits was that that condition did not render him totally disabled from performing his usual occupation within the meaning of the Policy. The Court accepts the truth of Dr. Miller's diagnosis, and the validity of his workplace restrictions: Plaintiff cannot climb ladders, work at high heights, drive or operate machinery or work with hazardous materials.

Second, in Plaintiff's Opposition (but not in his Motion), Plaintiff argues that various additional medical conditions besides his seizure condition also rendered him disabled, and further argues that the Court should consider Plaintiff's subsequent social security disability benefit award in considering whether Defendant rightly denied Plaintiff's application for benefits. Plaintiff's Opp. at 9:21-10:27. The Court agrees with Defendant that it would be inappropriate to consider arguments Plaintiff did not raise in its motion, especially since in stipulating to cross-motions for judgment the parties waived their rights to file reply briefs.[1] Therefore, the Court GRANTS

---

[1] It is true that there has been some exchange on this issue, because *Defendant* addressed the argument of whether Plaintiff's other medical conditions rendered him disabled, and Plaintiff responded to these arguments his opposition. Defendant's Motion, at 17:1-21:22; Plaintiff's Opp., at 9:21-10:27. This does not change the fact that Plaintiff declined, in its motion, to raise the argument that physical conditions other than seizures rendered Plaintiff disabled. And Plaintiff did not introduce materials from the social security process in his initial motion; he introduced it for the first time as an exhibit to his opposition brief.

1  Defendant's Motion for Administrative Relief, and will not consider these arguments or evidence
2  in resolving this motion.[2]

3  This action, therefore, comes down to whether Plaintiff's physical condition and work
4  restrictions, as documented by Dr. Miller, render him "Totally Disabled" within the meaning of
5  the Policy. And that question is resolved by determining "the important tasks, functions, and
6  operations generally required by employers from those engaged in" Plaintiff's Usual Occupation
7  "that cannot be reasonably omitted or modified."

8  According to Defendant, Plaintiff's "Usual Occupation" was essentially a desk job, and
9  involved few, if any, high-intensity activities that could not be reasonably omitted or modified.
10 Plaintiff's account is that his "Usual Occupation" involved climbing ladders, working at high
11 heights, driving and operating machinery and working with hazardous materials. The parties have
12 identified the following potential sources of information on this question:

1. The definition of "Drafter-Oil & Gas" in the U.S. Department of Labor's Dictionary of Occupational Titles' ("DOT"). (As quoted by Defendant's vocational analysts at AR 71-73 & 731.)

2. The description of "Architectural Drafter" in the Occupational Information Network / Standard Occupational Classification coding system ("SOC/O*NET"). (Also quoted by Defendant's vocational analysts at AR 71-73 & 731.)

3. The Occupational Outlook Handbook ("OOH") (cited, but not quoted by Mr. White in his vocational analysis at AR 731).

4. The job description supplied by Eichleay's office manager ("First Job Description"), AR 57-62.

---

[2] The Court is strengthened in its conclusion by the fact that Plaintiff declined to file any opposition to Defendant's Motion for Administrative Relief, as was his right under Civil Local Rule 7-11(b). At oral argument, the Court invited Defendant counsel again to argue against the Motion for Administrative Motion. Defendant's counsel argued only that a court performing a *de novo* review in an ERISA case is permitted to consider evidence outside of the Administrative Record. This is true, but it fails to address Defendant's argument that it was inappropriate to introduce this evidence for the first time in an opposition brief which gave Defendant no right of reply. Neither does it demonstrate that the information from the Social Security Award is relevant to Defendant's denial of benefits, which occurred months earlier.

1    5.  The Employer's Statement supplied by Eichleay's office manager Jette Jensen

2       ("Employer's Statement"), 722-25.

3    6.  The Position Qualification outline provided by Ramos' former supervisor, Valero

4       employee Al Ex. AR 360-61; 368 ("Position Qualification Outline").

5    7.  The second job description received as part of Dr. Mitchell's records in appeal. AR

6       244-49 ("Second Job Description").

7    8.  Plaintiff's own account of his job in his original claim form, AR 703-05, and in his

8       response to Defendant's initial denial. AR 356-68 ("Plaintiff's Job Description").

Defendant's vocational analysts reviewed the First Job Description and the Employer's Statement, and then consulted the first three sources to identify the scope of Plaintiff's Usual Occupation. The parties strongly dispute the weight this Court should afford to the first three sources. While there is authority on both sides of the question, the DOT especially has been recognized as a widely used and reasonable reference for administrators and courts to use under ERISA. See Dionida v. Reliance v. Reliance Standard Life Ins. Co., 50 F.Supp. 2d 934, 939-40, n. 4 (N.D. Cal. 1999). However, it is undisputed is that these three sources are general job descriptions, not specific accounts of Plaintiff's actual Usual Occupation. They are only persuasive to the extent that the particular definitions identified by Defendant's vocational consultants do, in fact, coincide with Plaintiff's Usual Occupation. See, e.g., Prado v. Comecq, Case No. 05-2716 SC, 2008 WL 191985, at *8 (N.D. Cal. Jan. 22, 2008) (use of the DOT is less compelling when there are noted differences between the DOT definition and the claimant's actual job description).

Plaintiff's best evidence is as follows. The Position Qualification Outline, with its handwritten additions, requires that Plaintiff be able to maneuver and climb as well as drive, and Mr. Ex stated that Plaintiff would not be able to resume that job with his seizure condition. AR, 360 & 368. The Second Job Description requires that Plaintiff climb a ladder and balance, without creating a hazard to others. AR 247. Plaintiff's Job Description describes him as needing to verify piping and climb 200 feet. AR 356 & 362. The Employer's Statement required Plaintiff to wear personal protection equipment and gather data in an industrial/construction job site. AR

720. Even the DOT and SOC/O*NET definitions (the persuasiveness of which Plaintiff disputes) call for constant visual acuity, and require the employee to visit sites to compile measurements (which, in the case of the Valero refinery, appears to require climbing and driving).

However, there are reasons to consider this evidence less persuasive evidence of Plaintiff's "Usual Occupation" than the evidence cited by Defendant. Plaintiff's Job Description, in addition to being potentially self-serving, seems to describe his specific role at the Valero refinery rather than the "Usual Occupation" that Defendant insured. The Second Job Description is of unclear origin and dubious validity, since it seems to describe a different job than in Plaintiff's original application. It, too, appears to describe only Defendant's specific tasks and additional responsibilities at the Valero refinery. The same is true of the Position Qualification Outline, which has additional handwritten information of unclear origin.

The Court must weigh this evidence against the evidence indicating that, for the most part, Plaintiff's Usual Occupation did not require activities from which he was disabled. The First Job Description mainly describes an office job, with no boxes checked for hazardous conditions. The Employer's Statement describes a job that is "generally performed in an office environment." AR 725. That statement's job title – "Piping Designer B" – does not mandate that the employer gather field data, in contrast to the requirements for "Piping Designer A." AR 724-25. And the definitions in the DOT and SOC/O*NET (which are the only definitions any analyst has identified as coinciding with Plaintiff's Usual Occupation) call for light physical demand level, and do not indicate that climbing, driving, and working with heavy equipment are necessary requirements.

The preponderance of the evidence does not indicate that climbing ladders, working at high heights, driving or operating machinery or working with hazardous materials were important tasks, functions, and operations generally required by those engaged in Plaintiff's Usual Occupation, such that those tasks could be reasonably omitted or modified. Therefore, Plaintiff has not demonstrated that his seizure condition and his workplace restrictions rendered him "Totally Disabled" within the meaning of the Policy. On *de novo* review, the Court does not conclude that Defendant wrongly denied benefits.

///

### III. CONCLUSION

For the foregoing reasons, Defendant's motion for judgment is hereby GRANTED and Plaintiff's motion for judgment is hereby DENIED.

**IT IS SO ORDERED**.

Dated: August 13, 2013

_____
JON S. TIGAR
United States District Judge